Thank you very much. Good morning. May it please the Court, my name is William Janago. I represent Mr. Vahedi. I'd like to reserve one minute of my time for rebuttal. Just watch the clock, counsel. There are four grounds why the Court should reverse for a resentencing here. The first is the denial of continuance was an abuse of discretion. The Court did not complete its Rule 32 inquiry, and Mr. Vahedi was prejudiced by that. There was also procedural error, and the sentence itself was subsequently unreasonable. The Court, however, doesn't need to get past the first issue, which is the denial of the continuance. I understand the standard there is an abuse of discretion, but in this case, there really was grounds for a continuance. It was necessary because of the But the request for the continuance came in the middle of the sentencing hearing, did it not? In other words, you had six days within which to request a continuance, and nothing happened. That is true, Judge O'Scanlan, but as I point out in my brief, the case had been continued several times before without the filing of papers. It's unclear how that was accomplished. You're right that there was time to file a memorandum. It wasn't done. We don't know why it wasn't done, because the Court really was committed in going forward. The lawyer did say at the beginning, I would like to bifurcate the proceeding. He did mention there were factual inaccuracies, and at that point, he made the request. The Court said, I'm going to deny the motion. So I think on that record, it's unclear exactly what had happened. Certainly, there was not a memorandum filed. Weren't the victims already assembled in court that morning when he made the motion? Yes, they were, Judge Bybee. There were a lot of people then that were going to be put out that had been looking forward to this for a long time, and there had been no notice to the Court or to anybody else that there might be a continuance. That's true, Judge Bybee, but I would point out that the second factor, which is the inconvenience here, would have been caused, and was caused, I mean, would have been caused if they granted the continuance, by the belated filing of the sentencing memorandum on the Friday before the sentencing. So it was the victim's lawyer who filed the belated sentencing memorandum. That was completely different than anything— What about the memorandum added anything you weren't prepared to address in any event? I mean, there's this notion that somehow the memorandum turned it into an adversarial proceeding for a much higher sentence that you couldn't have anticipated. You knew there were going to be victims testifying, correct? I was not the lawyer, but it certainly was— Whoever was knew that there would be victims testifying, correct? Yes, Judge Fischer, obviously, yes. That could influence the district judge, correct? Yes, that's true. And the district, I just want to make sure we understand the setting, and that the defense counsel would have no confidence or assurance that the district judge would see the way you or the government saw it. The district court would have its own discretion to make its own judgment. That's true, Judge Fischer. And Judge Pragerson said, okay, I'm not going to consider the last filed thing. I've the victim's statements. I've made notes already on things. So I'm trying to understand, what is it about the continuance that was so necessary? Because that's also part of the— Absolutely, absolutely. And the victim impact statements were filed back in October, so you're certainly right that they were in the file and had been submitted to the court. However, the victim's sentencing memorandum included assertions of fact that were not in the victim impact statements, which Judge Pragerson noted in his sentencing. He, for example, said— Which ones were new? The fact that he had purchased a Lamborghini for his brother. Lamborghini was mentioned in Ms. Mohammadi's victim impact statement. Was that not before the court? There was an invoice for the Lamborghini, but there was no assertion that as far as about the purchase for the brother. Judge said, I'm not going to consider that when the government said that he didn't have it. So he said, I'm not going to hold that against the defendant since it can't be traced to him. Well, counsel, I'm looking at the declaration of Mary Mohammadi. I'm looking at GER 65, paragraph 17. As I mentioned in my June 30, 2009, declaration of paragraph 61, Kaveh Vahidi told me that he had bought a $950,000 Lamborghini that he put into his brother Q's name. That doesn't seem like much of a surprise, does it? Not from her declaration there. But this was already before the district court. This was before the district court. Okay. So what's the problem? What's new? The fact that he had been on the run for several years. Okay. So the Lamborghini is now off the table. That's true. I think that the other stuff, the additional information that was, the way that it was presented, it's just not the facts themselves. It's also the way that it was presented. The sentencing memorandum that was submitted by the victims said that he had attempted to kill two of the victims, that he had destroyed documents, that he couldn't be trusted, that there were hidden assets. The pre-sentence report relates that the FBI had a forensic accountant examine this information and that there was no money that was hidden. They have a right to say that. Absolutely. But they also have to have an opportunity, Mr. Vahidi should have had an opportunity to respond. It really did change fundamentally the nature of the sentencing. Mr. Vahidi had given a deposition. I don't get that at all from what the judge said. The judge at the end of the day said, I have read these victim impact statements. I have heard the victims. I understand your—he's talking directly to them. I've heard what you said. And it is clear from his sentencing decision that what moved him most, if not entirely, was the impact on the victims, that he destroyed their futures in many of their cases. That's what he said as the basis for his above guidelines sentence. So I understand the last minute filing. I think we all appreciate that. But I'm not sure it carries the burden that you suggest, particularly when I think it's quite clear from the record, not only on the Lamborghini, on the lamb. The government said, by the way, no, he wasn't a fugitive, but he did make representations to the victims that he had gone to Abu Dhabi or the like. So the victims may have thought he was on the lamb, he was hiding out from them. But the judge made note of all that. And what he came down on was the awful impact on the victims. And you're talking about a surprise and new facts. And that's why I asked at the outset, the defense counsel had to know that these victims were going to be testified. So what's the surprise? The surprise, Judge Fischer, is that it turned into a proceeding where they were trying to demonize Mr. Fahidi. I understand the information was in the victim impact statement. But there's also the factor of presentation of the information. And it is that which changed the nature of the proceeding. I mean, the reality is, is that they filed a very aggressive memorandum. All Mr. Fahidi wanted to do was an opportunity to respond to that. And that's just fair. There's a lot of information there, as I pointed out in my reply brief, that's just wrong. Look at his, look at the amicus brief that was filed. It's full of inaccuracies. And one of the things that Rule 32, which is the second issue, is supposed to protect against is inaccurate information. There are statements in there that are just not accurate. Number of the victims are not victims. And I understand they were on notice of the victim impact statements. But as a criminal defense lawyer, when you walk into the courtroom and the pre-sentence report is recommending 121 months without any cooperation, the government is recommending 97 months, you have a sense that this case is going to be resolved in a way that the parties have addressed. Counsel, you're down to less than a minute. If you wish to reserve, you may do so. We'll hear from the government. May it please the Court. April Christine on behalf of the United States. And yes, Your Honors, there was no surprise. But I think in this case, because there was no abuse of discretion to deny the continuance, one of the most important issues here is that the Court did say it was not going to consider the victim's legal arguments. The Court made that very specific. First, because the supplemental position paper had been filed the morning of sentencing. And the Court said the Court and the parties did not have a chance to consider it. The one thing, Counsel, that was of concern to me was the Court's reference to the trip to Abu Dhabi. Because I'm not sure that that did appear in the victim impact statements. It looks like that may have appeared in the Burke brief in the first instance. And, Your Honor, there was also reference in it. And I apologize. I don't have the exact reference. But I believe there may have also been a reference in some of the government's earlier papers. It seems that that defendant's claim to the victims was that he had all of these projects that were overseas, that were foreign projects in the U.S. and overseas. And so the victims may have believed that he had spent a lot of that money or taken a lot of that money and put it into accounts overseas. Well, here's what the exchange said. The Court, you did go. You were a fugitive for a while, weren't you? And the defendant says, No, sir. Weren't you on the run? Didn't you spend money in places like Abu Dhabi? No, sir. I've never been to Abu Dhabi. Where were you then? Never been there. Let me ask the government. Your Honor, Mr. Vahidi, to my understanding, was not a fugitive in the sense that he had been charged and then ran. He was a fugitive. I wouldn't use the term fugitive because that is how I understand fugitive. Instead, before he was charged, I think the victims were trying to or the like. He goes on to say, I understand there was, this is Mr. Bowman, I understand there was also some travel, I believe, to Morocco. Abu Dhabi, I thought, was the lie that he told victims in terms of where he had accounts, where there was going to be a construction project, things of that nature. Is that in the record? That information, was that information before the court? Yes, that information was before the court because in the victim's impact statements, they describe what the defendant told them to induce them to part with their money. And one of the things that the defendant told them was that he had projects that were overseas. And specifically mentioning Abu Dhabi, including Abu Dhabi? I don't recall that specifically. But Abu Dhabi was referenced in the Burke brief, is that right? I believe that's correct. Yes, I believe that is correct, Your Honor. Okay. So what concerns me is that there do appear to be some things that slipped into the district court's conversation here that look like they originated in the Burke brief. Well, and if I may point out to the court, the victim's counsel also had an opportunity to speak at the hearing. And he did speak at the hearing, and he reiterated a lot of the arguments that were in his papers, and certainly in the earlier papers. And so at that point, because defendant had an opportunity to respond to the victim's arguments at the hearing, and in fact, the court gave defendant the opportunity to cross-examine the victim's counsel, and defendant did. He asked questions of the victim's counsel. Now, he decided, or perhaps decided not to, ask specific questions about that, but he did have that opportunity to respond. He also had an opportunity to question the victims as they spoke, and he declined to question the victims as they spoke. Defendant had an opportunity to personally address the court, and the court specifically asked him questions about some of the issues that were raised, and defendant denied them, and the court said he would not consider them. The court, and the three issues, actually, that defendant complains about on appeal are only the arson issue, the Lamborghini issue, and the fugitive issue. The court specifically said it was not going to consider the arson issue on its own, without even questioning defendant about that. The court did ask defendant about the Lamborghini. Defendant denied it. The government did not press that issue, and the court said it would ignore that allegation. As far as the fugitive allegation is concerned, as the court recognized already, both defense counsel and the government explained to the court that defendant was not a fugitive from justice, in the legal sense, in the sense that the court was asking about. The government did not press that. The court acknowledged that clarification, and moved on. So, the fact of the continuance, because the court specifically said it was not going to consider the victim's counsel's legal arguments, that it was, in fact, the was going to leave that to the government, that is the reason why there was no use or purpose to grant a continuance to respond to legal arguments that the court was not going to consider. But what about factual? I mean, we're debating, you know, what was in the record or not, and you say, well, he could have cross-examined and the like, but the information came in, to the extent the day. The court didn't look at that, correct? That is correct, Your Honor. It's the one that came in, what, six days before? That is correct, Your Honor. Okay. So, you're saying that whatever was in, whatever factual errors or whatever was in that six-day old filing, defense counsel had enough to go on to prepare to cross-examine or to at least respond at the hearing? Yes, Your Honor. And not only the six days, the six days were the six days from the victim's first sentencing paper that highlighted those factors. And again, the only three factors, the only three allegations the defendant is complaining about on appeal are those three that I just mentioned. And they were in that, what was it, November 29th? The November 29th filing. But the actual factual allegations were actually in the victim's impact statements that were filed two months before the sentencing hearing. Including Abu Dhabi. And Your Honor, if I recall from reading the victim impact statements, there was, it wasn't Abu Dhabi, I believe it was another city within that country. It wasn't specifically Abu Dhabi. But defendant is not complaining about that on appeal. He's complaining that he didn't have an opportunity to respond to the allegations. And he is arguing that the fact that the court raised those issues, the arson, the Lamborghini, and the fugitive, necessarily to the defendant says that the court considered the legal argument. But that is not the case because those allegations were made in the victim's impact statements. And defendant had those statements certainly well before sentencing. And to the extent that they may have been highlighted in the victim's November 29th filing, the defendant had at least six days to respond to that filing. And you, I think we, you're going to run out of time. And one thing I'd, could you address the substantial upward adjustment of the sentence well beyond the guidelines and what the government itself was asking? Yes, Your Honor. Certainly the government in its position paper and at sentencing recommended a 97-month sentence. And that, as the government specified to the court, was the highest sentence that the government could recommend under the terms of the plea agreement. But the government did argue to the court specifically that the guidelines did not, the guideline range in this case, did not adequately account for the harm to the victims and for the impact on the victims based on defendant's conduct. The government argued that and the court recognized that. And so when the court was responding to the government's argument and also responding to defendant and the victim's statement, the court specifically said it did not agree with defendant's four-year recommended sentence. It had difficulty with the government's 97-month sentence. It listened to the victim's individually asked for a maximum sentence, maximum punishment that was allowed under law, and collectively asked for 20 years. The court stated, the court stated that it had considered a whole range of sentences and it explained exactly why it talked about this sentence. It said based under the 3553 factors, the most predominant factor was harm to the victim and protection of the public. It considered the guidelines. It had seen ever. And the court stated specifically that it had been on the bench for 17 years and had done over 1,000 sentencing. The court said that this case was different because of the level of subterfuge that defendant employed and he exploited cancer victims, disabled, elderly, people that were already deep in financial difficulty. He ingratiated himself in their but to mortgage their homes to the hilt. The victims themselves talked about all of that and the nature and circumstances of the offense. They also talked about the impact. They said they suffered lost homes, failed marriages, ruined credit, no money for their kids, no money to pay for their kids' education, stress, suicidal thoughts, panic attacks. And this court has said that those life-destroying impacts are the type of impacts that a district court can consider in giving an upward variance. And so this court made it clear that it considered this case one of the most difficult cases that it had, one of the most vicious cases that it had, and that when you look at the record and you look at the victim's impact statements and the statements that they made and the court's explanation of the way it viewed this case in comparison to all the other cases, it does adequately explain why the court gave the 216-month sentence. And it explains it in a way that allows this court meaningful review. Thank you very much, counsel. You ended right on the nose. Mr. Tango, you have less than a minute. That was a very effective piece of advocacy and it's exactly why there should have been a contingent in this case, because many of those people were not victims at all. And as a lawyer, when you walk into a courtroom, if you are going to have a proceeding where you're going to have to take on the victims, that's a very different nature of a proceeding than it is when you think that. And I understand it's in the victim impact statements, but the presentation, just as Ms. Christensen made here, is a very powerful presentation. That was not in the victim impact statements. That collection and constellation of facts that was so powerful, Mr. Tango, I didn't have an opportunity to respond to that. I'm sorry, those came in through the oral statements? In his memorandum. No, I'm talking about the, how many victims testified? There were 10 victims who testified. And they all were victims? I think actually one of them was not a victim. Mr. Valentino is not a victim. Okay, was there an objection to his testimony? There was not an objection. Okay, so I'm just trying to understand. You said it was a powerful presentation. Counsel didn't source her statements. Were her sources all derived or derivable from what the victims themselves testified to at the hearing? I believe that you could put those together and present them in that way. I think that the manner of the memorandum. Yeah, but that was the legal argument that counsel said, the judge. Anyway, we can debate that. I'm just trying to make sure I understand what the complaint is, because if there had been no filing and the victims had testified in the way they did, and then the judge elicited the kind of passion and the like, we wouldn't be here. Is that correct? I think we'd still be here because the sentence was substantively unreasonable and procedurally. But on that issue, I understand. Okay. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision and the court will hear next. Sanford versus McEwen.
judges: O'scannlain, Fisher, Bybee